Paul Arthur **WILSON**, Appellant,

v.

**STATE of Minnesota, Respondent.**

No. CX–97–1908.

Supreme Court of Minnesota.

July 30, 1998.

---

Deborah Ellis, St. Paul, for appellant.

Hubert H. Humphrey III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Michael Richardson, Asst. County Atty., Minneapolis, for respondent.

## OPINION

BLATZ, Chief Justice.

In 1994, appellant Paul Arthur Wilson was convicted of premeditated first-degree murder and sentenced to life in prison. On direct appeal to this court, Wilson raised three issues: (1) erroneous admission of his post-arrest statements; (2) insufficient evidence of intent; and (3) juror misconduct. We affirmed the conviction.[1] Approximately two years later, Wilson filed a petition for postconviction relief, alleging that he was denied a fair trial on several grounds and that he was deprived of effective assistance of trial and appellate counsel. The postconviction court denied his request for an evidentiary hearing on his petition and his sub-

---

1. *State v. Wilson,* 535 N.W.2d 597, 607 (Minn. 1995).

sequent motion for reconsideration of the petition. Wilson appeals to this court from these orders, and we affirm.

On December 19, 1993, Paul Wilson shot and killed his longtime companion, Mary Ann Hagford in the Crystal, Minnesota house he and Hagford owned together. Within an hour of the shooting, Wilson was arrested. He was eventually charged with premeditated first-degree murder, first-degree murder while committing domestic abuse, and first-degree assault.[2] After trial, the jury acquitted Wilson of first-degree murder while committing domestic abuse but convicted him of premeditated first-degree murder. The district court denied Wilson's motion for a new trial and sentenced him to life in prison.[3]

In March 1997, Wilson filed a petition for postconviction relief raising five main issues: (1) he was denied a fair trial because the jury foreperson withheld information which, if known, would have prompted a peremptory strike; (2) he was denied a fair trial because he was precluded from arguing self-defense to the premeditated murder charge; (3) the trial court relied upon inaccurate factual findings when it concluded he voluntarily waived his rights; (4) ineffective assistance of trial counsel; and (5) ineffective assistance of appellate counsel. The postconviction court denied Wilson's request for an evidentiary hearing, concluding that his ineffective assistance of appellate counsel claim was without merit and that all other claims were either already raised and decided on direct appeal, or were known at the time of direct appeal and thus were barred from consideration. Wilson filed a motion to reconsider his petition, which was also denied by the postconviction court.

A court may dismiss a petition for postconviction relief without conducting an evidentiary hearing if the petition, files, and record "conclusively show that the petitioner is entitled to no relief."[4] On review, this court determines only whether there is sufficient evidence to support the postconviction court's findings and will not disturb the postconviction court's decision absent an abuse of discretion.[5] Once a defendant has had a direct appeal, "all matters raised therein, and all claims known but not raised, will not be considered in a subsequent petition for postconviction relief."[6]

With the exception of Wilson's claim of ineffective assistance of appellate counsel, all other claims were already raised and decided, or were known at the time of his direct appeal.

First, Wilson claims that he was denied due process and a fair trial because the jury foreperson, B.D., withheld information relating to his position and responsibilities in the Baptist Church. This issue was already raised and decided on direct appeal. Post-trial, Wilson moved to hold a *Schwartz*[7] hearing based on information given by another juror after trial that B.D. was an ordained Baptist minister. Assuming for purposes of the argument that B.D. was an ordained Baptist minister and that traditional Baptists are opposed to drinking, the district court nevertheless refused to hold a *Schwartz* hearing, concluding that B.D. did not lie on his jury questionnaire form or during voir dire and that B.D.'s status in the church did not affect the verdict. On direct appeal, we concluded that the district court did not abuse its discretion. However, Wilson contends that this issue was not, and in fact,

2. Before trial, the state dismissed the first-degree assault count.

3. For a detailed account of the facts underlying Wilson's conviction, *see Wilson*, 535 N.W.2d at 598–602.

4. Minn.Stat. § 590.04, subd. 1 (1996). *See also Fratzke v. State*, 450 N.W.2d 101, 102 (Minn. 1990) (stating that an evidentiary hearing is not required unless the alleged facts, if proved, would entitle a petitioner to the requested relief).

5. *Rainer v. State*, 566 N.W.2d 692, 695 (Minn. 1997).

6. *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (Minn.1976).

7. This court, in *Schwartz v. Minneapolis Suburban Bus Co.*, established a method for inquiry into allegations of juror misconduct. 258 Minn. 325, 328, 104 N.W.2d 301, 303 (1960). A prima facie case of juror misconduct is established by submitting "sufficient evidence which, standing alone and unchallenged, would warrant the conclusion of jury misconduct." *State v. Larson*, 281 N.W.2d 481, 484 (Minn.1979), *cert. denied* 444 U.S. 973, 100 S.Ct. 467, 62 L.Ed.2d 388.

could not have been fully developed until after the motion for a new trial was filed. Apparently, sometime after the motion for a new trial was filed, an extensive post-trial interview of B.D. was conducted, in which it was discovered that B.D. was an ordained deacon in the Baptist Church. This information lends no support to Wilson's claim of juror misconduct. The fact that B.D. was an ordained deacon, rather than a minister as assumed by the district court in denying Wilson's post-trial motion, does not change the analysis.

■ Wilson's next three claims were all known and should have been raised at the time of direct appeal. First, throughout the trial, Wilson requested that he be allowed to present a self-defense theory to the premeditated murder count. Clearly this issue was known at the time of direct appeal, and accordingly he is precluded from raising it in a postconviction proceeding.

■ Next, Wilson's claim that the district court relied on inaccurate factual findings is based on an affidavit from Wilson's appellate counsel stating that at trial, it was established that Wilson's blood alcohol concentration (BAC) level was approximately .34 to .36 at the time of interrogation, not .29 as assumed by the district court when ruling that Wilson's waiver was knowing and intelligent. This information was available to Wilson at the time of direct appeal, so this issue is likewise barred from consideration in the postconviction proceeding.

■ Finally, as for Wilson's ineffective assistance of trial counsel claim, such claims are also generally precluded if known at the time of direct appeal unless an evidentiary hearing is necessary to develop additional facts in order to evaluate the petitioner's claims.[8] Here, Wilson claimed that his trial counsel was ineffective for failing to present expert testimony at the omnibus hearing on the effects of elevated BAC levels on an individual's ability to knowingly and intelligently waive his or her Fifth Amendment rights. This claim could have been raised on direct appeal based on the briefs and trial court transcript, without any additional factfinding, and therefore it is properly barred from consideration in the subsequent postconviction proceeding.[9]

Wilson's ineffective assistance of appellate counsel claim was not known at the time of his direct appeal. Nonetheless, this claim is wholly without merit and was properly dismissed by the postconviction court. Wilson contends that his appellate counsel's performance was deficient because he failed to raise three claims on direct appeal: (1) ineffective assistance of trial counsel, despite appellate counsel's "perceived inadequacies of trial counsel at the omnibus hearing;" (2) federal constitutional claims; and (3) the claim that Wilson was denied an opportunity to present a complete and consistent defense when the district court precluded him from arguing self-defense to the premeditated murder charge.

■ To be entitled to an evidentiary hearing on his ineffective assistance of appellate counsel claim, Wilson must allege facts which, if proved, would affirmatively show that his attorney's representation fell below an objective standard of reasonableness, and that but for the errors, the result would have been different.[10] When reviewing a claim of ineffective assistance of appellate counsel, this court determines "whether the representation and the assistance were reasonable in the light of all the circumstances."[11] There is a "strong presumption that a counsel's performance falls within the wide range of 'reasonable professional assistance.'"[12]

8. *Black v. State,* 560 N.W.2d 83, 85 n. 1 (Minn. 1997). *See also Fratzke,* 450 N.W.2d at 102, *Dent v. State,* 441 N.W.2d 497, 499 (Minn.1989).

9. *Cf. Robinson v. State,* 567 N.W.2d 491, 495 (Minn.1997) (holding that a petitioner's claim that his trial counsel was ineffective for failing to communicate two plea offers required additional factfinding and therefore such a claim was properly raised in his petition for postconviction relief).

10. *Fratzke,* 450 N.W.2d at 102; *Roby v. State,* 547 N.W.2d 354, 356 (Minn.1996).

11. *Dent,* 441 N.W.2d at 500 (citing *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

12. *State v. Jones,* 392 N.W.2d 224, 236 (Minn. 1986).

In his petition for postconviction relief, Wilson argues that the attorney hired to represent him on appeal had "little if any experience in preparing criminal appeals." As the postconviction court points out, Wilson's appellate counsel was self-chosen. Further, counsel did seek and obtain assistance on the appeal from an expert in the area of chemical dependency and alcohol issues. We have stated that "generalized allegations of incompetence are not reason for an evidentiary hearing."[13] And although Wilson claims that the failure of his appellate counsel to raise several issues on direct appeal deprived him of effective assistance of appellate counsel, we note that counsel appealing a criminal conviction has no duty to raise all possible issues. It is well established that an appellate counsel has "no duty to include claims which would detract from other more meritorious issues."[14] There is no indication that appellate counsel's representation fell below an objective standard of reasonableness, nor does Wilson allege any facts which, if proved, would tend to show the outcome of his appeal might have been different.

We therefore conclude that all issues raised by Wilson in his petition for postconviction relief, except for his ineffective assistance of appellate counsel claim, are procedurally barred from consideration. Furthermore, the postconviction court did not abuse its discretion in dismissing Wilson's ineffective assistance of appellate counsel claim on the merits.

Affirmed.

---

13. *Fratzke,* 450 N.W.2d at 102.

14. *Dent,* 441 N.W.2d at 500 (quoting *Case v. State,* 364 N.W.2d 797, 800 (Minn.1985)).